United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Alexander Sokol, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-23535-Civ-Scola |
| | ) |
| TransUnion, LLC, and others, | ) |
| Defendants. | ) |

## Order Granting in Part and Denying in Part Motion to Dismiss

Plaintiff Alexander Sokol claims Defendants Trans Union, LLC, Equifax Information Services, LLC, and Self Financial, Inc., doing business as Lead Bank, violated the Fair Credit Reporting Act by incorrectly labeling his account at Lead Bank as 60 days past due.[1] (Compl., ECF No. 1.) Equifax and Lead Bank have answered the complaint, but TransUnion seeks dismissal, under Federal Rule of Civil Procedure 12(b)(6), arguing, primarily, that Sokol's allegations fail to show that TransUnion's reporting was in any way inaccurate. (Def.'s Mot., ECF No. 23.) According to TransUnion, the report is accurate because the past-due status indicates only the account's *historical* delinquency, not that the account was delinquent at the time the report was issued. (*Id.* at 1.) TransUnion also contends Sokol has failed to plead the required elements of willfulness. (*Id.* at 19–21.) In response, Sokol insists a reasonable interpretation of the report could lead one to believe the account was delinquent as of the printing of the report, even several months after the account's closing. (Pl.'s Resp., ECF No. 27.) Sokol also maintains he has alleged enough to survive dismissal regarding his willfulness claims. (*Id.* at 16–19.) TransUnion has timely replied, and the motion is ripe for review. After careful review of the briefing, the record, and the relevant legal authorities, the Court disagrees with TransUnion and **denies** its motion to dismiss, **in part**, with respect to TransUnion's inaccuracy arguments but **grants** the motion, **in part**, with respect to Sokol's willfulness claims. (**ECF No. 23**).

**1. Legal Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as

---

[1] In his complaint, Sokol says the account was identified as being 90 days past due. But it appears this was a typographical error, as TransUnion points out in its motion and which Sokol does not dispute in response (Pl.'s Resp. at 9, 14, 15). Because the parties appear to agree on this point, the Court deems the complaint amended, by interlineation, to reflect a pay status of 60, rather than 90, days past due.

true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (cleaned up). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (cleaned up).

**2. Background**

TransUnion is a consumer reporting agency as defined by the FCRA. (Compl. ¶ 6.) Based on information supplied by Lead Bank, TransUnion displayed data about Sokol's account in his credit report. (*Id.* ¶14–15, 21.) TransUnion reported the information as follows:[2]

---

[2] TransUnion introduced a full copy of Sokol's credit report, attached to its motion to dismiss, without any objection from Sokol. Because the authenticity of the document is not challenged and it is also central to Sokol's claims, the Court takes the report into consideration without converting this motion to dismiss into a motion for summary judgment. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[T]he court may consider a document attached to a motion to

| SELF FINANCIAL INC / LEAD BANK # | | | (515 CONGRESS AVE, SUITE 2200, AUSTIN, TX 78701, (866) 845-9545) | | | |
|---|---|---|---|---|---|---|
| Date Opened: | 09/17/2019 | | Date Updated: 01/31/2020 | | Pay Status: | >Account 60 Days Past Due Date< |
| Responsibility: | Individual Account | | Payment Received: $1,538 | | Terms: | Monthly for 12 months |
| Account Type: | Installment Account | | Last Payment Made: 01/31/2020 | | Date Closed: 01/31/2020 | |
| Loan Type: | SECURED | | | | >Maximum Delinquency of 60 days in 01/2020< | |

High Balance: High balance of $1,700 from 09/2019 to 01/2020
Remarks: CLOSED
Estimated month and year that this item will be removed: 11/2026

| | 01/2020 | 12/2019 | 11/2019 | 10/2019 | 09/2019 |
|---|---|---|---|---|---|
| Balance | $0 | $1,509 | $1,565 | $1,565 | $1,700 |
| Scheduled Payment | | $150 | $150 | $150 | $150 |
| Amount Paid | $1,538 | $70 | $0 | $150 | $0 |
| Past Due | | $80 | $0 | $0 | $0 |
| Rating | 60 | 30 | OK | OK | OK |

(Def.'s Mot., Ex. A-1, *Cr. Rep.*, ECF No. 23-2, 12.) Summarizing, the report indicates Sokol opened the Lead Bank account—a secured installment loan—in September 2019, with a balance of $1700. Sokol made his first scheduled payment of $150 in October 2019. He missed the November payment entirely but then submitted $70 in December, at which point the account reflected a past due amount of $80, with a total remaining balance of $1509. By the following month, January 2020, his account was sixty-days past due. On January 31, 2020, however, the entire remaining balance of, at that point, $1,538 was paid off and the account was closed.

Also, in the report, issued almost a year after Sokol paid off his balance, there is a field labeled "Pay Status." Next to that field, the report reads, ">Account 60 Days Past Due Date<." The report also displays a field titled "Date Updated" which reads, "01/31/2020," the same date indicated for the fields "Last Payment Made" and "Date Closed." The report also separately notifies, ">Maximum Delinquency of 60 days in 01/2020<." Elsewhere in the report, TransUnion explains that remarks bracketed by "> <" are considered "adverse." (*Cr. Rep.* at 4.)

Sokol notified TransUnion, on November 17, 2020, that he disputed the accuracy of the information being reported regarding his Lead Bank account. (Compl. ¶ 22.) In particular, Sokol complains about the "Pay Status" field's showing "60 Days Past Due." (*Id.* ¶ 17.)

### 3. Discussion

At the center of TransUnion's argument, in urging dismissal, is its insistence that all the Lead Bank information shown in TransUnion's credit report for Sokol is accurate and not misleading. (Def.'s Mot. at 2.) In seeking support, TransUnion points to over a dozen other district court cases—a

---

dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.").

handful from courts in the Eleventh Circuit as well as several others from across the country—that TransUnion says have all scrutinized similar, or even identical reports, and found them to be compliant with the FCRA. (*Id.* at 7–14; *see also* Def.'s Not. of Supp. Auth., ECF No. 31.) At bottom, TransUnion insists that it "is clear in this case [] that the pay status field is a *historical*"—rather than current—"depiction of how [Sokol's] account was reporting at the time it was paid, closed, and last updated." (Def.'s Reply at 6 (emphasis added).) The Court is not persuaded and disagrees with TransUnion's ultimate position that Sokol has categorically "failed to point to an inaccuracy" in his report (Def.'s Reply at 1) or that Sokol's allegations are "in conflict with a plain reading" of his credit report (Def.'s Mot. at 14).

### A. The Fair Credit Reporting Act's Framework

The FCRA provides a private right of action against consumer reporting agencies for negligent or willful violations of its provisions. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007). "One of the Act's stated purposes is to ensure fair and accurate reporting about consumers." *Erickson v. First Advantage Background Services Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020). In order to state a claim, a plaintiff must plead and prove an inaccuracy in her credit report or credit file. *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). As set forth in § 1681e(b), a consumer reporting agency must "follow reasonable procedures to assure maximum possible accuracy of the information" contained within a consumer's credit report. 15 U.S.C. § 1681e(b). Under 15 U.S.C. § 1681i(a), if a consumer submits a complaint about a report's accuracy, an agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate . . . or delete the item from the file . . . before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer." 15 U.S.C. § 1681i(a)(1)(A).

The "maximum possible accuracy" standard under § 1681e(b) requires that reports "be both factually correct and free from potential for misunderstanding." *Erickson*, 981 F.3d at 1248. Under this standard, "a report that contains factually incorrect information is plainly inaccurate." *Id.* at 1252. Likewise, "a report that contains factually correct information but nonetheless misleads its users as to its meaning or implication" also violates the Act. *Id.* Whether a report is misleading or inaccurate is viewed through the lens of an "objectively reasonable interpretation[]." *Id.* And, so, "[i]f a report is so misleading that it is objectively likely to cause the intended user to take adverse action against its subject, it is not maximally accurate." *Id.* Conversely, "the fact that some user somewhere could possibly squint at a report and

imagine a reason to think twice about its subject would not render the report objectively misleading." *Id.* In the end, then, to survive dismissal, Sokol must allege that the report was "factually incorrect, objectively likely to mislead its intended user, or both," thereby showing that TransUnion violated the accuracy standard set forth in the Act. *Id.*

> **B. Sokol has sufficiently alleged that the report is objectively likely to cause its intended user to take unwarranted adverse action against him.**

In support of its position that Sokol has failed to allege that the report is either likely to mislead or factually incorrect, TransUnion points to an abundance of cases where courts have concluded, on similar or nearly identical facts, that those plaintiffs' cases fell short. Upon careful review, though, the Court finds many of those cases materially distinguishable from Sokol's. For example, in many of them, there is either no indication that the consumer paid off an account's balance or facts affirmatively showing that the balance was not, in fact, paid off before it was closed. *E.g.*, *O'Neal v. Equifax Info. Serv.*, 21-CV-80968-RAR, 2021 WL 4989943, at *1 (S.D. Fla. Oct. 27, 2021) (Ruiz, J.) (no payment-received field in report and no indication that the plaintiff's balance had been actually paid off); *Lacey v. TransUnion, LLC*, 8:21-CV-519-02-JSS, 2021 WL 2917602, at *2 (M.D. Fla. July 12, 2021) (zeroed-out and closed account was accompanied by a notation in credit report showing that the "foreclosure collateral" had been sold); *Soto Torres v. Trans Union, LLC*, ECF No. 70, No. 1:20-cv-03637 (N.D. Ill. Aug. 2, 2021) (at the time the plaintiff's account was closed, the plaintiff was still past due on his mortgage payments); *Settles v. Trans Union, LLC*, 3:20-CV-00084, 2020 WL 6900302, at *1, *4 (M.D. Tenn. Nov. 24, 2020) (no payment-received or last-payment-made fields and plaintiff acknowledged that he had never brought the account current before it was transferred or before the lender submitted an insurance claim on the account); *Hernandez v. Trans Union LLC*, 3:19CV1987-RV/EMT, 2020 WL 8368221, at *3 (N.D. Fla. Dec. 10, 2020) (account "was settled for less than the full balance"); *Gross v. Priv. Natl. Mortg. Acceptance Co., LLC*, 512 F. Supp. 3d 423, 427 n.2 (E.D.N.Y. 2021) ("plaintiff has not alleged that he paid off his obligations to [the creditor] before the account was transferred"); *Bibbs v. Trans Union LLC*, 521 F. Supp. 3d 569, 572 (E.D. Pa. 2021) ("[the plaintiff] does not allege she paid off her accounts before [the creditor] closed them . . . and transferred them to another lender"); *Parke v. Trans Union, LLC*, No. 2:20-cv-04487-ER, ECF No. 32 (E.D. Pa. Mar. 5, 2021) (account transferred and closed without any indication it was first brought current); *Samoura v. Trans Union LLC*, CIV 20-5178, 2021 WL 915723, at *1 (E.D. Pa. Mar. 10, 2021) (account

transferred to another creditor with delinquent balance still outstanding); *Grossman v. Barclays Bank Delaware*, CIV.A. 12-6238 PGS, 2014 WL 647970, at *3 (D.N.J. Feb. 19, 2014) (plaintiff settled delinquent account for less than the full amount that he owed); *Brown v. Trans Union, LLC*, ECF No. 31, No. 21-cv-10503-MCA-MAH, at 2 (D.N.J February 24, 2022) ("Plaintiff does not allege that she paid off her debt prior to the loan being transferred, nor does she dispute that she was delinquent in her payments prior to the transfer."). Here, in contrast, in Sokol's case, the report shows Lead Bank's receiving a payment of $1,538, bringing the account current (Ex. A-1 at 12); Sokol affirmatively alleges that he paid off his account in full (Compl. ¶ 16); and even TransUnion acknowledges that Sokol's account was paid off (Def.'s Reply at 6). These differences are consequential. While one might argue that a consumer who fails to ever bring an account current warrants an additional derogatory dent in his credit report, the same cannot be said for someone, like Sokol, who eventually, albeit belatedly, made good on the entirety of his arrears.

      A number of other cases, on the other hand, that TransUnion relies on, involve consumers who, like Sokol, also paid off their balances before their accounts were closed. TransUnion relies on these cases to show that other courts have interpreted the pay-status field to reflect only the *historical* status of a consumer's account, and not as implicating anything about the consumer's current standing with that creditor. *See Smith v. Transunion, LLC*, 6:21-CV-349-GAP-LRH, 2021 WL 3111583, at *2 (M.D. Fla. July 1, 2021) ("[T]he pay status section reflects historical information regarding a past delinquency and does not suggest that the Account is still open and past due."); *Ostrander v. Trans Union LLC*, CV 20-5227, 2021 WL 3271168, at *8 (E.D. Pa. July 30, 2021) (similar); *Gibbs v. Trans Union, LLC, et al.*, ECF No. 66, No. 2:21-cv-00667-JDW, at 2 (E.D. Pa. Sept. 28, 2021) (similar); *Alston v. Equifax Info. Services, LLC*, CIV.A. TDC-13-1230, 2014 WL 6388169, at *5 (D. Md. Nov. 13, 2014) (crediting defense counsel's argument at a preliminary-injunction hearing that that "the notation 'Status–Over 120 days past due' does not refer to the current status of the account, but rather designates that at a prior time, the account was over 120 days past due"); *Brown v. Trans Union, LLC*, 8:21-CV-2371-VMC-JSS, 2022 WL 344579, at *3 (M.D. Fla. Feb. 4, 2022) ("[T]he only reasonable reading of the . . . account is that the account was past due in September 2020, at which time the account was updated one last time and closed – zeroing out the balance. It does not indicate . . . that [the creditor] is currently 60 days (or 90 days) past due."). The Court, however, is not similarly persuaded as to TransUnion's arguments here.

      Notably, in above-cited cases, each court struggles with reconciling the incongruity between a report's showing, on the one hand, that a consumer is

past due on his account while, on the other hand, that the account has been paid off and closed. Implicit in these decisions appears to be an acknowledgement that the pay-status fields, remarking that the accounts are X-number of days past due, can only be harmonized if they are interpreted to refer to the historical statuses of the accounts. For example, in one case, a court remarks on the internal inconsistency, noting that "an account with a $0 balance cannot currently be past due," because, after all, "what would the debtor have to pay to bring the account current?" *Ostrander*, 2021 WL 3271168, at *8 (cleaned up). Indeed, this crystallizes the heart of the issue: declaring that a closed and fully paid off account is "60 Days Past Due Date," at bottom, does not make sense. Without more, it seems likely to prompt a reviewer to, at a minimum, presume a mistake of some sort: either the account is not actually closed, as reported, and is indeed still X days past due; or the account is not actually still X days past due, as reported, but is, indeed, really closed. To address that incongruity, the courts referenced above appear to have relied on their underlying knowledge of the actual status of the accounts—that they were paid off, closed, and not currently delinquent—in concluding that the reference to arrears is purely historical. But, here, a hypothetical reviewer of Sokol's report, would not be similarly armed with that same background knowledge. Instead, a consumer's report is likely being reviewed precisely because the reviewer is wholly unfamiliar with that consumer's credit history. That reviewer then would be without a basis to simply assume the delinquency is entirely over and done.

      In this regard, Sokol's Lead Bank report is particularly confusing, especially when reading the report "as a whole," as TransUnion urges and as the caselaw appears to require. Much like the reports analyzed by the cases cited by TransUnion, Sokol's report shows that, after falling into arrears, he paid off his balance in full and closed his account. At the same time, despite the information that appears to indicate Sokol is current on his account, the pay-status field reads ">Account 60 Days Past Due Date<"—also much like the cases relied upon by TransUnion. This is confusing enough, but further complicating the report are two other wrinkles. One is an additional remark, entered below the "Date Closed" field, which reads, ">Maximum Delinquency of 60 days in 01/2020<." (*Cr. Rep.* at 12.) The other is the report's notation, in a key, that "[a]ny remark containing brackets > < indicates that this remark is considered adverse." (*Id.* at 4.) Taking into account these additional factors, the Court finds it would not be objectively unreasonable to interpret the pay-status field here to reflect negatively on Sokol's credit worthiness. First, Sokol's historical delinquency is recorded in the remark describing his maximum delinquency of 60 days in January 2020. It would, therefore, not be

unreasonable for a reviewer to infer that the delinquency noted in the pay-status field indicates something independent from and in some way supplementary to Sokol's historical delinquency. And if it's not a historical assessment, then, certainly, a reasonable inference would be that it is in some way a current assessment of Sokol's account status or the status in which he left the account upon closing it.

TransUnion insists that such an interpretation would be unreasonable in light of the notations in the report showing that the account is closed with a zero balance. But that is part of the problem: even TransUnion acknowledges that the pay status field is confusing, if not inaccurate, *unless* one reads into it an understanding that it refers to Sokol's account's historical status. But to interpret the pay-status field this way, the Court would have to look beyond the report and the complaint in this case. Furthermore, interpreting the pay-status field as commenting on the present condition of the account is not necessarily unreasonable. For example, many of the cases TransUnion relies on depict consumers who settled their accounts for less than the full amount owed. While it might make sense for that consumer's pay status to be frozen as perpetually past due, it seems unfair for the consumer who paid in full, like Sokol, to suffer the same fate. But that is exactly what the TransUnion's purported use of the pay-status field implies: two unequally situated consumers' reports would be, ultimately, indistinguishable.[3] Ultimately, the Court finds the report "so misleading that it is objectively likely to cause the intended user to take adverse action against its subject"—especially when reading the facts in the light most favorable to Sokol. *Erickson*, 981 F.3d at 1252.

Because the Court finds, at a minimum, that the way TransUnion reported information about Sokol, in the pay-status field, is objectively likely to mislead its intended user, it declines to address TransUnion's arguments about (1) Sokol's algorithm theory; (2) the propriety of reporting accurate but derogatory information about a consumer; or (3) Sokol's subjective beliefs. Further, the Court is not persuaded by TransUnion's reliance on what it calls "payment terms" cases—the Court does not find those cases to be sufficiently analogous to the facts here to be compelling.

---

[3] Similarly, the Court contemplates what would have happened had Sokol paid off his balance in January but, for whatever reason, kept the account open until February and *then* closed it. Presumably, once Sokol paid up his balance, in January, his pay status would reflect he was current. So, by the time he then closed the account, in February, his report would no longer indicate that he was 60 days past due. And, so, despite no material difference in the account's activity, Sokol would no longer have a derogatory remark in the pay-status field.

### C. Sokol has failed to state a claim for willfulness.

"Under 15 U.S.C. § 1681n(a), any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer for actual, statutory, or punitive damages." *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1336 (11th Cir. 2015), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015) (cleaned up). "A violation is 'willful' for the purposes of the FCRA if the defendant violates the terms of the Act with knowledge or reckless disregard for the law." *Id.* (cleaned up). "A company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* (cleaned up).

Sokol seeks damages based on willful conduct in count one, labeled, "Willful Violation of the FCRA as to TransUnion," as well as in paragraph 44 of count two, labeled, "Negligent Violation of the FCRA as to TransUnion." (Compl. ¶¶ 34, 36–37, 44.) But Sokol alleges only in the most conclusory of terms that TransUnion's FCRA violations were willful and reckless. (Compl. ¶ 34 ("Transunion has willfully and recklessly failed to comply with the Act.").). Without a single fact, however, from which the Court could infer actual knowledge or recklessness, Sokol's allegations are wholly insufficient to show that TransUnion's error went beyond mere carelessness or negligence. Accordingly, the Court agrees with TransUnion that Sokol's claims hinging on willfulness should be dismissed.

### 4. Conclusion

As set forth above, the Court **grants in part and denies in part** TransUnion's motion to dismiss. (**ECF No. 23**). To that end, the Court, dismisses count one (and any aspect of count two that relies on willfulness) against TransUnion for a failure to state a claim. Conversely, the Court is not persuaded by TransUnion's argument that, based solely on the complaint and the report, the only reasonable reading of Sokol's Lead Bank tradeline is that the pay-status field accurately reflects only upon Sokol's historical, and not current, account status. Accordingly, Sokol's claim against TransUnion for a negligent violation of the FCRA, as set forth in count two, survives.

TransUnion must file its answer to what remains of Sokol's claims

against it **on or before March 23, 2022**.

**Done and ordered**, in Miami, Florida, March 16, 2022.

_____
Robert N. Scola, Jr.
United States District Judge